UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


RONALD DiMAMBRO,
                    Petitioner,                    Case Number: 24-cv-11419
                                                   Honorable Susan K. DeClercq
v.                                                 United States District Judge


JEFFREY HOWARD,

                    Respondent.
_____/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS, DENYING CERTIFICATE OF APPEALABILITY,
AND GRANTING LEAVE TO APPEAL *IN FORMA PAUPERIS***

Ronald DiMambro, an inmate at Kinross Correctional Facility, has filed a

petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF No. 1. The petition

challenges his conviction of first-degree felony murder and first-degree child abuse.

For the reasons discussed below, the petition will be denied with prejudice and a

certificate of appealability will not be issued but leave to appeal *in forma pauperis*

will be granted.

**I. BACKGROUND**

DiMambro's convictions stem from the death of Nicole Randall's two-year-

old son, Damien Sutton. DiMambro was convicted by a jury and sentenced to life

imprisonment without parole for the felony-murder conviction and 15 to 25 years

imprisonment for the child-abuse conviction.[1] *People v. DiMambro*, No. 353363, 2022 WL 4587513, at *2 (Mich. Ct. App. Sept. 29, 2022).

DiMambro filed an appeal by right in the Michigan Court of Appeals. The Michigan Court of Appeals affirmed DiMambro's conviction and sentence. *DiMambro*, 2022 WL 4587513, at *1–2. The Court summarized the evidence presented at trial:

> [T]he prosecutor presented evidence that [DiMambro] and Randall were dating in 2013, and that they, along with Randall's two-year-old son, moved into the home of DiMambro's parents. DiMambro would watch the child while Randall worked. Randall testified that when she left for work on August 21, 2013, the child had no health or behavioral issues. DiMambro, however, testified that the child was less active that day and that his appetite was dramatically different. That afternoon, DiMambro put the child in his playpen and attended to some other matters in the house. When he returned and picked up the child, the child went limp and was struggling to breathe. DiMambro and his father called for emergency assistance. The child went into a coma and, despite surgical intervention, died from blunt force head injuries on August 27, 2013.
>
> During the investigation, DiMambro offered alternative explanations of how the child could have been accidentally injured, including that he fell from a barstool and struck his head on the ceramic tile floor days before August 21, 2013. The prosecution's medical experts, Dr. Mary Lu Angelilli, a pediatrician at Children's Hospital of Michigan, and Dr. Daniel Spitz, the medical examiner who conducted the child's autopsy,

---

[1] In 2013, DiMambro was convicted of the same charges. The trial court granted him a new trial because the prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose 32 autopsy photographs. *People v. DiMambro*, 318 Mich. App. 204, 211 (2016). The Michigan Court of Appeals affirmed the trial court's order granting a new trial. *Id.* The Michigan Supreme Court denied the prosecution's application for leave to appeal. *People v. DiMambro,* 501 Mich. 895 (2017).

2

both testified that the severity of the child's injuries would have had an immediate effect on his condition. They ruled out the accidental causes suggested by DiMambro, both because they were too remote in time and because they were inconsistent with the severity of the child's injuries. The experts also believed that violent shaking could have contributed to some of the injuries.

Dr. Angelilli concluded that the child died from nonaccidental trauma. Dr. Spitz believed that the child suffered brain trauma from an injury that occurred within seconds to no more than an hour before he began experiencing breathing problems and became unconscious. In Dr. Spitz's opinion, the injury was likely caused by striking the child against a door, wall, or something of substantial means; the injuries were also consistent with shaking the child for 20 to 30 seconds. DiMambro initially admitted in a police interview that he shook the child for up to 30 seconds, but he later reduced his time estimate to 10 seconds and claimed that it involved only gentle shaking. Dr. Spitz concluded that the cause of death was blunt force head injuries and the manner of death was homicide.

DiMambro's expert, Dr. Gregory Shoukimas, a radiologist, did not believe that the condition of the child's brain was consistent with blunt force trauma. He believed that the condition of the brain was caused by a deprivation of oxygen. Dr. Shoukimas testified that it was possible that the fall from the barstool caused small subdural hematomas that are known to be associated with seizures, and a seizure could have later caused an airway obstruction. According to Dr. Shoukimas, the child could have appeared normal for up to two weeks before the seizure occurred. Another defense expert, Dr. Shaku Teas, a forensic pathologist, also believed that the barstool fall could not be ruled out as a cause of the child's injuries, and she believed that the child could have had a "lucid interval"[3] between the fall and when the symptoms became apparent. Dr. Teas reviewed Dr. Spitz's work and classified the cause of death as indeterminate, rather than as an accident or a homicide.

---

[3]Dr. Teas testified that a lucid interval is "a period of time that, after you sustain a head injury, you are more or less normal, and then something happens and you collapse."

3

*Id.*[2] DiMambro sought and was denied leave to appeal in the Michigan Supreme Court. *People v. DiMambro*, 512 Mich. 916 (2023).

DiMambro then filed this habeas corpus petition. He raises three claims: (i) the trial court abused its discretion by allowing Dr. Angelilli to testify about CAT scans which were not her area of expertise; (ii) the prosecution failed to timely disclose the medical examiner's iron-staining test results; and (iii) trial counsel was ineffective for failing to object to the jury instructions on felony murder.

## II. LEGAL STANDARD

A person in custody under a state-court judgment may obtain habeas relief only when the adjudication of their claim resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." 28 U.S.C. § 2254(d).

"A decision can be 'contrary to' clearly established precedent in one of two ways: it arrives at a different outcome than the Supreme Court did when faced with materially indistinguishable facts, or it applies a different legal rule than one that the

---

[2] These facts are presumed correct on habeas review under 28 U.S.C. § 2254(e)(1). *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009).

Supreme Court set forth." *White v. Plappert*, 131 F.4th 465, 476 (6th Cir. 2025) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).

"A state court unreasonably applies Supreme Court precedent when it uses the right legal rule, but it reaches a bottom-line judgment that is so obviously wrong that no fair-minded jurist could possibly agree." *Id.* at 477 (cleaned up). "In determining whether a state court behaved unreasonably, federal courts may consult only the specific, binding holdings of contemporaneous Supreme Court cases—not dicta, not subsequent holdings, and not general statements of law that aren't themselves holdings." *Id.* (citing *Brown v. Davenport*, 596 U.S. 118, 136 (2022)).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). But a petitioner may rebut this presumption with clear and convincing evidence. *Warren v. Smith*, 161 F.3d 358, 360–61 (6th Cir. 1998). Finally, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

### III. DISCUSSION

### A. Claim One: Admission of Expert Testimony

In his first claim, DiMambro alleges that the trial court erred by permitting the prosecution's expert witness, Dr. Angelilli, to testify outside her area of expertise. ECF No. 1 at PageID.35–38.

The admissibility of expert testimony under state evidentiary rules is generally a matter of state law. It is not cognizable on federal habeas review unless the ruling "was so prejudicial that it violated [the petitioner's] right to a fundamentally fair trial." *Pudelski v. Wilson*, 576 F.3d 595, 612-13 (6th Cir. 2009). Moreover, absent clearly established Supreme Court precedent holding that the admission of a particular category of expert testimony violates the Constitution, federal habeas relief is unavailable. *Wilson v. Parker*, 515 F.3d 682, 706 (6th Cir. 2008).

The trial court found Dr. Angelilli qualified to testify as an expert in general pediatrics and child-abuse pediatrics. ECF No. 9-11 at PageID.1639. Dr. Angelilli testified that the child's head injury could not have resulted from an accident, such as falling from a barstool, falling down the stairs, or other typical household accidents. *Id.* at PageID.1678-82. She further testified that, based on the nature of his injuries, the injury was inflicted immediately before the child began to show symptoms. *Id.* at PageID.1677, 1729. She explained that the CT report showed more swelling on the right side of the child's brain than on the left. *Id.* at PageID.1666. The asymmetrical nature of the swelling supported a diagnosis of trauma. *Id.* at PageID.1667. Dr. Angelilli based her opinion on a physical examination, the child's medical history, his treatment records, and consultation with other health care providers, including the radiologist's findings regarding his CAT scans. *Id.*

6

The Michigan Court of Appeals denied this claim on direct review holding that Dr. Angelilli "did not offer her own interpretation of the CAT scans and images" but "relied on doctors who are radiologists and experts in reading those CAT scans." *DiMambro*, 2022 WL 4587513, at *4. So, Dr. Angelilli "was permitted to base her opinions on findings made by the radiologists involved in the child's care." *Id.*

DiMambro has not identified any clearly established Supreme Court precedent holding that the admission of expert testimony under these circumstances violates due process. Nor has he shown that the Michigan Court of Appeals unreasonably applied federal law. As the Michigan Court of Appeals explained, Dr. Angelilli did not independently interpret the child's CAT scans or offer opinions outside her expertise. Rather, she relied on the radiologist's findings as part of her evaluation in reaching opinions within her own specialty of child-abuse pediatrics. Experts routinely rely on information generated by other medical specialists in forming opinions within their own fields of expertise. The state court therefore reasonably concluded that Dr. Angelilli's testimony did not exceed the scope of her expertise.

Accordingly, the Michigan Court of Appeals' decision was neither contrary to nor an unreasonable application of clearly established federal law, and DiMambro is not entitled to habeas relief on this claim.

## B. Claim Two: Late Disclosure of Evidence

In his second claim, DiMambro argues that the prosecution's late disclosure of evidence violated state discovery rules and denied him his right to due process of law and the right to a fair trial. ECF No. 1 at PageID.39–43. Specifically, he argues that the prosecution failed to disclose its expert's analysis until the fifth day of trial that. *Id.*

DiMambro's claim that the prosecution violated state law does not entitle him to relief. There is no general constitutional right to discovery in a criminal case. *See Weatherford v. Bursey*, 429 U.S. 545, 559 (1977), (denying due process claim of a defendant who was convicted with aid of surprise testimony from an accomplice who was an undercover agent); *United States v. Sanders*, 106 F.4th 455, 472 (6th Cir. 2024) (citing *Weatherford*, 429 U.S. at 559). A claim that a prosecutor violated state discovery rules is not cognizable in federal habeas review because it is not a constitutional violation. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002).

DiMambro also argues that the delayed disclosure violated *Brady v. Maryland*, 373 U.S. 83, 87 (1963), and his rights to due process and a fair trial. The *Brady* disclosure doctrine requires the government to disclose exculpatory evidence to a defendant if it is "material either to guilt or to punishment." *Id.* at 87. But "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose." *United States v. Ross*, 703 F.3d 856, 881 (6th Cir.

8

2012) (internal quotation omitted). If previously undisclosed evidence is disclosed during trial, no *Brady* violation occurs unless the defendant can demonstrate prejudice. *Id.* at 881-82.

DiMambro moved to exclude the testimony or declare a mistrial, arguing the late disclosure prevented Dr. Teas from adequately reviewing the new evidence and suggesting the prosecution had intentionally provoked a mistrial. ECF No. 9-11 at PageID.15636–64. The trial court denied the motion but adjourned the experts' testimony. *Id.* The court moved Dr. Spitz's testimony from January 23 to January 28 and Dr. Teas's from January 24 to January 29, giving Dr. Teas additional time to review Dr. Spitz's slides. *Id.* Dr. Teas later confirmed that she received and reviewed the slides during the week before she testified. ECF No. 9-14 at PageID.2176. The Michigan Court of Appeals held that the late disclosure of Dr. Spitz's iron-staining analysis did not prejudice Petitioner. DiMambro, 2022 WL 4587513, at *6. "Dr. Teas confirmed that she was provided with Dr. Spitz's slides and reviewed them before testifying. In fact, Dr. Teas suggested that she disagreed with Dr. Spitz's conclusions about the iron staining on the scalp samples." *Id.*

Dr. Teas was provided with everything she needed to review Dr. Spitz's analysis. Critically, DiMambro has not indicated how earlier knowledge would have changed Dr. Teas's testimony or the defense strategy. Moreover, no *Brady* violation occurred because the prosecution disclosed the information, even though it was late.

Thus, the record does not support DiMambro's argument regarding the prosecution's late disclosure of Dr. Spitz's slides. The state court's conclusion was therefore reasonable, and the outcome of the trial was not undermined by the prosecutor's late disclosure.

### C. Claim Three: Ineffective Assistance of Counsel

In his third claim, DiMambro argues that trial counsel was ineffective for failing to object to the trial court's jury instructions on the elements of felony murder and failing to request a specific unanimity instruction. ECF No. 1 at PageID.44–54.

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient, and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688. To show prejudice under *Strickland*, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

Federal claims of ineffective assistance of counsel that have been adjudicated on the merits by a state court are subject to deferential standards: *Strickland* and the Antiterrorism and Effective Death Penalty Act (AEDPA). *See Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (describing *Strickland* standard in context of

10

habeas petition). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Id.* (cleaned up).

DiMambro first argues that trial counsel was ineffective for failing to object to the felony-murder instruction, which deviated from the model jury instruction in MICH. MODEL CRIM. JURY INSTR. 16.4. The model instructions provides that the first element of felony murder is that "the defendant caused the death of [name deceased], that is, that [name deceased] died as a result of [state alleged act causing death]." *Id.* 16.4(2). The trial court instructed the jury that "the defendant caused the death of Damien Sutton; that is, Damien Sutton died as a result of blunt force head injuries." ECF No. 9-15 at PageID.2530.

The Michigan Court of Appeals held that this portion of the instruction did not precisely track the model instruction because "blunt force head injuries" is "not a specific act causing death, but rather is the type of injury alleged to have caused the child's death. In other words, a blunt force head injury can be inflicted or accidental." *DiMambro*, 2022 WL 4587513, at *8. Nevertheless, the state court held that counsel was not ineffective for failing to object:

> Yet it is clear, reading the instructions in their entirety, that the trial court instructed the jury that it had to find that *DiMambro caused the child's blunt force head injuries*, which was the act that caused the child's death. The jury was instructed that it had to find that, when DiMambro committed the acts that caused the child's death, he was "committing or attempting to commit the crime of first-degree child abuse." The trial

11

court read the jury the elements of first-degree child abuse, which included finding "that the defendant either knowingly or intentionally caused serious physical harm to [the child]." Thus, reading the felony-murder instructions as a whole, the jury knew that it needed to find that DiMambro committed an act that caused a blunt force head injury, with the identified states of mind, and that he committed or attempted to commit first-degree child abuse, in which he knowingly or intentionally caused serious physical harm to the child. Accordingly, even if counsel erred by not objecting, reversal is not required because the instructions as a whole "fairly presented the issues to be tried and adequately protected the defendant's rights." *Kowalski*, 489 Mich at 502. Therefore, DiMambro cannot show that he was prejudiced by counsel's failure to object.

*DiMambro*, 2022 WL 4587513, at *8 (emphasis in original).

This Court cannot say that the Michigan Court of Appeals unreasonably applied *Strickland*. Under both Michigan and federal law, jury instructions must be considered as a whole rather than in isolation. *See Estelle v. McGuire*, 502 U.S. 62, 72 (1991). Here, the challenged instruction did not precisely track the model instruction by identifying the injury rather than the specific act causing death. *Cf.* MICH. MODEL CRIM. JURY INSTR. 16.4. *with DiMambro*, 2022 WL 4587513, at *8. Instead, the instructions required the jury to find that DiMambro knowingly or intentionally committed the act that inflicted the child's fatal blunt-force head injuries while committing or attempting to commit first-degree child abuse. *DiMambro*, 2022 WL 4587513, at *8. Thus, the deviation from the model instruction did not relieve the prosecution of its burden to prove every element of felony murder or otherwise mislead the jury as to the required findings. Any objection would have

12

lacked merit because the instructions accurately conveyed the applicable law when read as a whole. Trial counsel was not ineffective for failing to raise a meritless objection. *See Daniels v. Lafler*, 501 F.3d 735, 743 (6th Cir. 2007); *Tackett*, 956 F.3d at 375. Nor can DiMambro establish prejudice because there is no reasonable probability that an objection would have altered either the jury instructions or the outcome of the trial. Accordingly, the Michigan Court of Appeals' rejection of this ineffective-assistance claim was not contrary to, or an unreasonable application of, clearly established federal law, and habeas relief is not warranted.

DiMambro next argues that defense counsel was ineffective for failing to request a specific unanimity instruction. The Michigan Court of Appeals denied this claim:

> [T]he trial court did not need to instruct the jury that it had to unanimously agree on a specific act supporting the charge of felony murder. Although DiMambro offered alternative explanations for how the child might have been injured accidentally, the prosecution's theory at trial was that the child's death was not accidental and that none of DiMambro's explanations were consistent with the evidence. While the prosecution did not know exactly how the child was injured, it argued that DiMambro, the only person caring for the child when he could have been injured, caused the blunt force head injury that led to the child's death. The prosecution did not offer materially distinct proofs of different criminal acts or injuries that caused the child's death. Thus, any request or objection that defense counsel made would have been futile because the trial court was not required to give a specific unanimity instruction. And defense counsel cannot be ineffective for failing to make a futile request. *See Unger*, 278 Mich App at 256. Accordingly, defense counsel was not ineffective for failing to request a specific unanimity instruction.

13

*DiMambro*, 2022 WL 4587513 at \*9.

The Michigan Court of Appeals reasonably applied *Strickland*. The Supreme Court has held that jury verdicts in state criminal trials must be unanimous and not decided by majority vote. *Ramos v. Louisiana*, 590 U.S. 83, 109–10 (2020). However, there is no Supreme Court precedent requiring juror unanimity on the factual basis or theory of guilt underlying a verdict. *Addison v. Shoop*, No. 24-3027, 2024 WL 4579150, at \*3 (6th Cir. July 12, 2024) (citing *Schad v. Arizona*, 501 U.S. 624, 631-32 (1991); *Tackett*, 956 F.3d at 371). Here, as the Michigan Court of Appeals explained, the prosecution advanced a single theory—that DiMambro inflicted the blunt-force head injury that caused the child's death. The prosecution did not present materially distinct criminal acts that would have required a specific unanimity instruction.

Because DiMambro was not entitled to such an instruction, any request by counsel would have been futile. Counsel therefore was not constitutionally ineffective for failing to request one, nor can DiMambro demonstrate prejudice. Habeas relief is therefore denied for this claim.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that the Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED WITH PREJUDICE**.

14

Further, it is **ORDERED** that Petitioner is **DENIED** a certificate of appealability because he has not made a substantial showing of the denial of a constitutional right under 28 U.S.C. § 2253(c)(2). *See* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b); *Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000).

Further, it is **ORDERED** that Petitioner is **GRANTED** leave to proceed *in forma pauperis* on appeal because the Court concludes that an appeal may be taken in good faith. *See* Fed. R. App. P. 24(a).

**IT IS SO ORDERED.**

*/s/ Susan K. DeClercq*
SUSAN K. DeCLERCQ
United States District Judge

Dated: July 24, 2026